1  RICHARD JAFFE, ESQ.
   State Bar No. 289362
2  428 J Street, 4th Floor
   Sacramento, California 95814
3  Tel: 916-492-6038
   Fax: 713-626-9420
4  Email: rickjaffeesquire@gmail.com
5
   Attorney for Plaintiffs Douglas Mackenzie, MD
6  and Physicians for Informed Consent
7
8                    UNITED STATES DISTRICT COURT
9                    EASTERN DISTRICT OF CALIFORNIA
10
11  DOUGLAS MACKENZIE, MD and
12  PHYSICIANS FOR INFORMED CONSENT,
    a not-for profit physicians' organization
13
14              Plaintiffs,
15       v.                                    Case No.:  2:22-cv-01203-JAM-KJN
16  WILLIAM J. PRASIFKA,
17  in his official capacity as EXECUTIVE      **PLAINTIFFS' FIRST AMENDED
    DIRECTOR, MEDICAL BOARD OF                 VERIFIED COMPLAINT FOR
18  CALIFORNIA, and JOHN AND JANE DOES         DECLARATORY RELIEF,
    1-10 being unknown and other individuals   INJUNCTIVE RELIEF, AND
19  who violated Plaintiffs clearly established DAMAGES**
    First Amendment rights,
20
21              Defendants.
22
23
24
25
26
27
28
                                               First Amended Verified Complaint

1

## TABLE OF CONTENTS

2

Page #

3

TABLE OF AUTHORITIES ........................................................................................iii

4

JURISDICTION AND VENUE ................................................................................... 2

5

INTRODUCTION ........................................................................................................ 2

6

PARTIES ..................................................................................................................... 5

7

FACTUAL BACKGROUND ...................................................................................... 7

8
9

    A.    PLAINTIFF DOUGLAS MACKENZIE'S SPEECH AND THE
BOARD'S COMMUNICATIONS.................................................................. 7

10

    B.    THE FEDERATION OF STATE MEDICAL BOARD'S "CALL TO
ACTION"...................................................................................................... 9

11
12
13

    C.    THE BOARD'S ANNOUCEMENT THAT IT IS IMPLEMENTING
THE FEDERATION'S CALL-TO-ACTION TO PROSECUTE ITS
LICENSEES FOR COVID "MISINFORMATION" IS ILLEGAL
UNDER CALIFORNIA AND FEDERAL LAW............................................ 11

14
15

    D.    THE CALIFORNIA LEGISLATURE ANSWERS THE
FEDERATION'S CALL TO ACTION BUT THEN RECONSIDERS.......... 13

16

CLAIMS FOR RELIEF .............................................................................................. 16

17
18
19
20

    FIRST CLAIM FOR RELIEF:
        42 U.S.C. SECTION 1983 VIOLATION OF THE FREE SPEECH
        CLAUSE OF THE FIRST AMENDMENT OF THE UNITED STATES
        CONSTITUTION ASSERTED AGAINST DEFENDANT WILLIAM J.
        PRASIFKA, IN HIS OFFICIAL CAPACITY AS EXECUTIVE
        DIRECTOR, MEDICAL BOARD OF CALIFORNIA ................................. 16

21
22
23
24
25

    SECOND CLAIM FOR RELIEF:
        42 U.S.C. SECTION 1983 DUE PROCESS VIOLATION BASED ON
        THE VAGUENESS OF THE STANDARDS AND STATUTORY
        BASIS USED TO INVESTIGATE PLAINTIFF MACKENZIE FOR
        COVID "MISINFORMATION." THIS CLAIM IS ASSERTED
        AGAINST DEFENDANT WILLIAM J. PRASIFKA, IN HIS OFFICIAL
        CAPACITY AS EXECUTIVE DIRECTOR, MEDICAL BOARD OF
        CALIFORNIA. ............................................................................................ 20

26
27
28

    THIRD CLAIM FOR RELIEF:
        42 U.S.C. SECTION 1983 DAMAGE CLAIM AGAINST THE
        INDIVIDUAL JOHN AND JANE DOE DEFENDANTS S FOR CIVIL
        RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW..................... 22

PRAYER FOR RELIEF..................................................................................... 24

VERIFICATION.............................................................................................. 25

CERTIFICATE OF SERVICE ........................................................................ 26

1

## TABLE OF AUTHORITIES

2 **Federal Cases**

3 *Conant v. Walters,*
4    309. F.2d 629 (9th Cir. 2002) ...............................................................2, 18, 23

5 *D.C. v. City of St. Louis,*
6    795 F.2d 652 (8th Cir. 1986) .........................................................................21

7 *FCC v. League of Women Voters,*
   468 U.S. 364, 104 S. Ct. 3106 (1984) .........................................................16

8 *Hopkins v. Jegley,*
9    510 F. Supp. 3d 638 (E.D. Ark. 2021) ........................................................21

10 *Lowe v. SEC,*
11    472 U.S. 181, 105 S. Ct. 2557 (1985) .........................................................17

12 *McCullen v. Coakley,*
   573 U.S. 464, 134 S. Ct. 2518 (2014) .........................................................16
13

14 *Nat'l Inst. of Family & Life Advocates v. Becerra,*
   138 S. Ct. 2361 (2018)...............................................................3, 18, 23

15 *Pickup v. Brown,*
16    740 F.3d 1208 (9th Cir. 2014) .............................................2, 16, 17, 23

17 *Police Dept. of Chicago v. Mosely,*
18    408 U.S. 92, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972) ....................................16

19 *Potts v. Cty. of Trinity,* No. 2:12-CV-01793 JAM-CMK,
   2012 U.S. Dist. LEXIS 119920 (E.D. Cal. Aug. 22, 2012)...........................21
20

21 *Thomas v. Collins,*
   323 U.S. 516, 65 S. Ct. 315 (1945) .................................................................17

22 *United States v. Alvarez,*
23    567 U.S. 709, 132 S. Ct. 2537 (2012) ...........................................................3

24 *West Virginia State Board of Education v. Barnette,*
25    319 U.S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943) ....................................17

26 *Wollschlaeger v. Governor of Florida,*
   848 F.3d. 1293 (11th Cir. 2017)...............................................................3, 18
27

28

**State Cases**

*Bailey. v. Huggins Diagnostic & Rehab. Ctr. Inc.*,
  952 P.2d 768 (Colo. Ct. App. 1997) ................................................................. 17

**United States Constitution**

  Article 1, § 10 ................................................................................................ 12
  First Amendment ...................................................................................... passim
  Fourteenth Amendment ................................................................................. 16

**Federal Statutes**

  28 U.S.C. § 1331 ............................................................................................... 2
  28 U.S.C. § 1343 ............................................................................................... 2
  28 U.S.C. § 1391(b) .......................................................................................... 2
  28 U.S.C. § 2201 ............................................................................................... 2
  28 U.S.C. § 2202 ............................................................................................... 2
  42 U.S.C. § 1983 ........................................................................... 2, 16, 20, 22
  42 U.S.C. § 1988(b) .......................................................................................... 2

**State Statutes**

California Business & Professions Code
  § 2234 .............................................................................................................. 20
  § 2234 (e) ......................................................................................................... 21

California Government Code
  § 11342.600 ..................................................................................................... 12

**Federal Rules of Civil Procedure**

  Rule 15(a) .......................................................................................................... 1

**Internet Sources**

*AB-2098 Physicians and surgeons: unprofessional conduct* (*2021-2022*), Bill Analysis,
  CALIFORNIA LEGISLATIVE INFORMATION, https://leginfo.legislature.ca.gov/
  faces/billAnalysisClient.xhtml?bill_id=202120220AB2098 ............................ 14

*AB-2098 Physicians and surgeons: unprofessional conduct* (*2021-2022*), Bill Text,
  CALIFORNIA LEGISLATIVE INFORMATION, https://leginfo.legislature.ca.gov/
  faces/billTextClient.xhtml?bill_id=202120220AB2098 ............................... 5, 13

*AB-2098 Physicians and surgeons: unprofessional conduct* (*2021-2022*), Bill Text, CALIFORNIA LEGISLATIVE INFORMATION, (Date Published: 06/21/2022), https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202120220AB2098#99INT, § 1 (f) ................................................................................................................... 13

*About FSMB*, FEDERATION OF STATE MEDICAL BOARDS, https://www.fsmb.org/about-fsmb/ ................................................................................. 10

*FSMB: Spreading Covid-19 Vaccine Misinformation May Put Medical License At Risk*, FEDERATION OF STATE MEDICAL BOARDS, News Releases (Jul. 29, 2021), https://www.fsmb.org/advocacy/news-releases/fsmb-spreading-covid-19-vaccine-misinformation-may-put-medical-license-at-risk/ ............................................................. 10

*Underground Regulations*, OAL.CA.GOV, https://oal.ca.gov/underground_regulations/ ................................................................ 12

**Miscellaneous**

Assembly Bill 2098 ...........................................................................................4, 5, 13, 20

RICHARD JAFFE, ESQ.
State Bar No. 289362
428 J Street, 4th Floor
Sacramento, California 95814
Tel: 916-492-6038
Fax: 713-626-9420
Email: rickjaffeesquire@gmail.com

Attorney for Plaintiffs Douglas Mackenzie, MD
and Physicians for Informed Consent

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS MACKENZIE, MD and PHYSICIANS FOR INFORMED CONSENT, a not-for profit physicians' organization<br><br>                 Plaintiffs,<br><br>    v.<br><br>WILLIAM J. PRASIFKA, in his official capacity as EXECUTIVE DIRECTOR, MEDICAL BOARD OF CALIFORNIA, and JOHN AND JANE DOES 1-10 being unknown and other individuals who violated Plaintiffs clearly established First Amendment rights,<br><br>                 Defendants. | Case No.:  **2:22-cv-01203-JAM-KJN**<br><br>**PLAINTIFFS' FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES** |

COME NOW Plaintiffs Douglas Mackenzie and Physicians for Informed Consent ("PIC") by their attorney, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure as their First Amended Complaint, and hereby allege as follows:

1

**JURISDICTION AND VENUE**

2    **1.**    This is a 42 U.S.C. Section 1983 civil rights action for which this Court has

3    jurisdiction under 28 U.S.C. Section 1331. This Court has authority to grant the requested

4    injunctive relief under 28 U.S.C. Section 1343; the requested declaratory relief under 28

5    U.S.C. Sections 2201 and 2202; monetary damages under Section 42 U.S.C. Section 1983,

6    and costs and attorneys' fees under 42 U.S.C. Section 1988(b).

7    **2.**    Venue is proper in the federal Eastern District of California pursuant to 28

8    U.S.C. Section 1391(b). The named Defendant, and his employer, the Medical Board of

9    California have their principal place of business in this district and a substantial part of the

10   actions giving rise to this case, to wit, the Board's investigation of the Plaintiff Mackenzie

11   arose in this district.

12

**INTRODUCTION**

13   **3.**    This is a First Amendment challenge to the Medical Board of California's

14   attempt to intimidate by investigation, censor and sanction physicians who publicly disagree

15   with the government's ever-evolving, erratic, and contradictory public health Covid-19

16   edicts.

17   **4.**    Seventy-five years of judicial precedent have established that licensing

18   agencies cannot sanction, prosecute *or even investigate* physicians for speaking out in

19   public about a matter of public concern, regardless of the content, the expressed view point,

20   and even if those views are contrary to the opinions of the "medical establishment."[1]

21   **5.**    The courts have been extremely harsh when the government tries to suppress

22   speech because of its content and viewpoint likening such efforts as an attempt to create an

23   Orwellian "Ministry of Truth" [2] and analogizing government efforts to interfere with

24

25   _____

26   [1]    *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014). (*See* discussion at pages 16-17, 23 *infra*); and *Conant v. Walters,* 309. F.2d 629 (9th Cir. 2002). (*See* discussion at page 18-19,

27   23 *infra*.)

28   [2]    *See* G. Orwell Nineteen Eighty-Four, (1949) (Centennial ed. 2003). "Ministry of Truth" phrase as used by Justice Kennedy in his majority opinion striking down a statute

medical discourse to the world's most repressive regimes.[3]

6.      The individual Plaintiff is a California physician who spoke out in public about various aspects of the government's response to the pandemic and as a result of such public speech became subject to investigation by Medical Board of California ("MBC" or the "Board") for spreading Covid misinformation. However, there are at least two other physicians also under investigation for so called "Covid misinformation."

7.      Physicians' organization Plaintiff Physicians for Informed Consent is a California not-for- profit group whose mission is to deliver data on infectious diseases and vaccines, and unite doctors, scientists, healthcare professionals, attorneys, and families who support voluntary vaccination. It is essential to PIC's mission to protect the rights of its physician members (and the public), and to advocate for physicians to be able to provide the public and patients with comprehensive informed consent about the risks and benefits of vaccines as well as other public health care measures employed by public health authorities during the pandemic. Plaintiff Mackenzie is a physician member, officer, and a director of PIC.

8.      By the Board's actions against Plaintiff Mackenzie and other physicians, the Board has tacitly deputized California residents as potential informants to report physicians who criticize the government's public health Covid response, so that the Board can censor, sanction and reeducate them via its disciplinary process.

9.      In this case, the Board's abject affront to the First Amendment goes far beyond the individual physicians currently under Board investigation for their public speech, and even beyond the MBC itself.

---

which criminalized false fully protected free speech, *United States v. Alvarez,* 567 U.S. 709, 723, 132 S. Ct. 2537, 2547 (2012).

[3]      *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374 (2018) quoting *Wollschlaeger v. Governor of Florida*, 848 F.3d 1293, 1325 (11th Cir. 2017) (concurring opinion, quote set out and discussed on page 18 *infra.*)

**10.**     The Board's investigation is a response to a "call to action" press release by a private membership organization of state medical boards (the Federation of State Medical Boards, the "Federation") aimed to convince its member agencies to investigate, censor and sanction physicians who challenge public health edicts.

**11.**     At least two state medical boards (New Mexico and Tennessee) have enacted board policies effectuating the Federation's call-to-action to discipline physicians for spreading "Covid misinformation." However, the Tennessee board's policy was quickly overturned by the state legislature.

**12.**     Many other state legislatures have proposed similar legislation barring their state medical boards from charging physicians with professional misconduct based on their speaking out against Covid edicts.

**13.**     Unfortunately, the California legislature has gone in the direction of censoring and sanctioning physicians who exercise their Free Speech rights. In February 2022, Assembly Bill 2098 was introduced in the California Assembly. The original version of the bill made it a disciplinable offense for a physician to publicly challenge public health Covid edits. (*See* pages 13-14, 20, 23 *infra*.)

**14.**     However, the California Assembly realized that to do so would violate the First Amendment. As a result, an amended bill has been narrowed to apply only to communications between physicians and their patients.

**15.**     And yet, despite the Legislature's elimination of the public speech part of the bill, (which is at least a tacit admission by the Legislature that the Board cannot investigate or sanction physicians for expressing their views in public), the Board continues to investigate physicians for their public speech. On information and belief, the additional investigated members include but are not limited to physician members of PIC who have been targeted by Defendants' wrongful actions designed to chill protected speech, as alleged herein.

**16.**     The Board even appears to have recognized the inherent unconstitutional vagueness in its attempt to investigate and sanction physicians for publicly disagreeing

with the government's vague, ever changing, sometimes contradictory Covid positions,
and has even expressed concern that it could get bogged down in litigation after it
sanctions physicians for Covid misinformation.[4]

17.     It also appears as though the Board's actions against Plaintiff Mackenzie (and
any other physician under investigation for conduct prior to any enactment of AB 2098)
are based on an illegal underground regulation and an unconstitutional *ex post facto*
application of said underground regulation. (See pages 12-14, 20 *infra*)

18.     Whatever else can be said, it is surely true that this an important First
Amendment case with ramifications beyond the individual Plaintiff and even one state
medical board. It is important that this federal court clearly and firmly tell the Board and the
Federation, and signal to medical boards around the country, that the First Amendment
means that licensing boards cannot stop, punish or even investigate its licensees for
speaking out in public against mainstream opinions on matter of great public consequence
just because the agency disagrees with the view point expressed.

## PARTIES

19.     Plaintiff DOUGLAS MACKENZIE MD, is a plastic surgeon licensed to
practice medicine in the state of California. Plaintiff Mackenzie was a resident of Santa
Barbara County during the time his causes of action accrued against the Defendants.

20.     Plaintiff PHYSICIANS FOR INFORMED CONSENT is a not-for-profit
physicians' organization with a mission to deliver data on infectious diseases and
vaccines, and unite doctors, scientists, healthcare professionals, attorneys, and families
who support voluntary vaccination. This includes safeguarding the rights of physicians to

---

[4]     *AB-2098 Physicians and surgeons: unprofessional conduct* (*2021-2022*), Bill
Analysis, CALIFORNIA LEGISLATIVE INFORMATION, https://leginfo.legislature.ca.gov/
faces/billTextClient.xhtml?bill_id=202120220AB2098 at 6/24/22 Bill analysis, page 10,
comment 5: "MBC also states that 'The definition of "misinformation" is unclear and may
lead to legal challenges following the imposition of discipline under the proposed law." Of
course, there is currently no Board published definition of covid misinformation which
makes its investigation all the more constitutionally problematic under the Due Process
violation alleged in the Second Claim for Relief, starting at page 20 *infra*.

properly inform patients and the public about the risks and benefits of various vaccines, including the Covid vaccines. The group is also active in related legislative and board issues relating to the government's response to the pandemic.

21.   Through its physician members, it communicates with legislators and the medical board about its position on these issues. As such, its members are potential targets of the Medical Board's investigations of physicians for speaking out against the government's response to the pandemic.

22.   PIC has been forced to expend financial and other resources in attempts to reduce the injuries (especially chilled speech) caused by the Board's unlawful conduct targeting of PIC members' protected speech.

23.   PIC's educational mission depends entirely upon protected speech by physicians and is directly thwarted by the Board's unlawful conduct targeting that protected speech by physicians. PIC members, including but not limited to Plaintiff Mackenzie, are suffering immediate and threatened injury to their constitutional rights of speech, and consequently imminent threat to their due process rights to practice their chosen profession. PIC and its members have a personal stake – their very livelihoods – at issue in this controversy.

24.   Defendant WILLIAM J. PRASIFKA is the executive director of the Medical Board of California, and he is a defendant in this case in his official capacity for the requested declaratory and injunction relief. Upon information and belief, the Defendant is the final decision-maker on the Board's decision to investigate physicians for violations of Board enforced laws and rules, or at least he supervises the subordinate Board employee who make such decisions, and as such, he can ensure compliance with any injunction this Court imposes.

25.   JOHN AND JANE DOES 1-10 are the individual staff employees of the Board who decided or help effectuate the Board's decision to process the complaint against Dr. Mackenzie (and all other similarly situated physicians under Board investigation for so-called "Covid misinformation") required that he (they) submit a

written response to the complaints, rather than advising the complainants that the Board did not have the constitutional authority to investigate a physician for speaking out in public about a matter of public interest.

**FACTUAL BACKGROUND**

**A.    PLAINTIFF DOUGLAS MACKENZIE'S SPEECH AND THE BOARD'S COMMUNICATIONS**

26.    Plaintiff Douglas Mackenzie has been a California licensed physician for over 20 years. He has no board disciplinary history and no malpractice judgments against him.

27.    Generally speaking, Dr. Mackenzie does not agree with many of the public health policies and edicts enacted during the pandemic.  However, his beliefs do not impact his professional responsibilities as a plastic surgeon, as he follows all applicable public health directives regarding masking and other matters in his medical practice.

28.    On or about August 10, 2021, Dr. Mackenzie participated in a Zoom meeting of the Santa Barbara Unified School District. During the public comment portion of the meeting, he expressed his views on some Covid related public health issues. Here is what he said:

> "My name is Douglas Mackenzie. I am a surgeon in Santa Barbara. It's time to realize like some countries are, that SARS – CoV2 is endemic. We are not going to get to Zero Covid ever. We can't make it disappear with a vaccine, especially one that may improve symptoms, but as we are seeing won't stop reinfection or transmission. And despite the hype from the politicians and media, public health officials and physicians should have known this from the conclusions of the original studies. As far as variants, no, it's not the unvaccinated's fault, it's the nature of a respiratory virus and the limitations of these vaccines. They actually risk creating more virulent escape mutations. Think about the overprescribing of antibiotics and the emergence of resistant bacteria. Same concept.

> "More worrisome than the virus, (which has barely budged all-cause mortality), is the lack of consideration of the profound economic and psychological costs of unscientific, often fanatical policies. As we just heard, unnecessary over testing now being proposed for children?! Vaccination in

younger and younger people, where the harms from the vaccine far outweigh the harms of the disease?! The obsession for masking?! I see kids outside, playing sports, wearing masks, it's absurd! There is no science or logic to support that! I worry about society's descent into a mass psychosis trying to reach an impossible goal of eradicating Covid. Brace yourselves for ever more cycles of fear and confusion as the next variant arises, and the vilification of people unwilling to subject themselves to coerced vaccines gets more hateful. This can't end well unless more people wake up. Fortunately, as we see from the massive protests in the UK and France, the burning of vaccine passports in Italy and the vindication of ivermectin as a safe and effective treatment, people are waking up."[5]

**29.**    Dr Mackenzie's statements including his prediction that we will not get to zero Covid (which one year later has been proven true) as well as the other opinions he expressed are fully protected content and viewpoint First Amendment speech and do not involve his treatment or advice to individual patients.

**30.**    By letter dated December 15, 2021, the Board contacted Plaintiff Mackenzie and indicated that a complaint had been filed against him based on the comments he made at the Zoom meeting, and requested a written response. The letter noted that "if no response is received and it is confirmed that a violation of the law has occurred, future action could be taken by this agency."

**31.**    Plaintiff Mackenzie hired and paid a medical license defense attorney who responded on his behalf on January 3, 2022, which letter asserted Plaintiff's First Amendment rights to free speech and challenged the Board's investigation on First Amendment grounds. Dr. Mackenzie has paid his attorney $2,500.00 to date.

---

[5]    The scientific assertions expressed in his comments are supported by medical literature, public health officials, or experts in different countries. Some of these statements are reporting of events in other countries. Some statements are concerns shared by many others in the medical community or feared predictions based on what Plaintiff and many other medical professionals decry as the unrealistic expectation and target of eradicating Covid. If necessary, Plaintiff is prepared to show the source for each statement. However, the case law is clear that even if every statement he made were false (and they are not), his comments to the school board would still be fully protected by the First Amendment. *See* page 3, footnote 2 *supra*, and the First Claim for Relief starting on page 16 *infra*.

**32.**    The Board's investigation has had a chilling effect on Plaintiff, and he has concerns about expressing his views in a public forum in light of the Board's failure to provide any objectively discernable standards behind the Board's ongoing targeting of physicians engaged in protected speech. The Board targets physicians by leveraging its confidential relationship with the California Department of Consumer Affairs ("DCA"), a law enforcement agency, in order to intimidate physicians into thinking DCA will preemptively silence protect speech and discipline the physician publicly, all under color of law.

**33.**    This lawsuit was filed by Plaintiff Mackenzie on July 8, 2022, and was widely disseminated throughout California on that date.

**34.**    By letter dated July 14, 2022, the Board sent a letter to Plaintiff Mackenzie indicating that it was closing the investigation of him. [6]

**35.**    This case is not moot for Plaintiff Mackenzie because he plans on continuing to speak out against the government's response to the pandemic, and thus continues to be in danger from the Board's unconstitutional investigations.

**36.**    Upon information and belief, the Board has taken similar investigatory actions against at least two other physicians in the state.

**37.**    Plaintiffs are currently unaware how many other physicians face similar board investigations, but Plaintiffs allege this on information and belief based upon the Board's meeting minutes repeatedly expressing the Board's intent to target physicians for protected speech, and to partner with public and private organizations similarly interested in targeting physicians engaged in protected speech.

**B.    THE FEDERATION OF STATE MEDICAL BOARD'S "CALL TO ACTION"**

**38.**    According to its web site:

---

[6]    Service on the Defendant was effectuated on July 18, 2022. Plaintiffs have no information about when the Board received actual notice of the July 8, 2022 lawsuit, or specifically whether the Board was aware of the lawsuit prior to its July 14, 2022 letter closing the investigation.

> "The Federation of State Medical Boards represents the state medical and osteopathic regulatory boards – commonly referred to as state medical boards – within the United States, its territories and the District of Columbia. It supports its member boards as they fulfill their mandate of protecting the public's health, safety and welfare through the proper licensing, disciplining, and regulation of physicians and, in most jurisdictions, other health care professionals."

*About FSMB*, FEDERATION OF STATE MEDICAL BOARDS, https://www.fsmb.org/about-fsmb/.

39.     Its stated mission is to serve "as a national voice for state medical boards, supporting them through education, assessment, data, research and advocacy while providing services and initiatives that promote patient safety, quality health care and regulatory best practices." *Id.*

40.     By press release dated July 29, 2021, the Federation issued the following press release:

> "Physicians who generate and spread COVID-19 vaccine misinformation or disinformation are risking disciplinary action by state medical boards, including the suspension or revocation of their medical license. Due to the specialized knowledge and training, licensed physicians possess a high degree of public trust and therefore have a powerful platform in society, whether they recognize it or not. They also have an ethical and professional responsibility to practice medicine in the best interests of their patients and must share information that is factually, scientifically grounded and consensus driven for the betterment of public health. Spreading inaccurate COVID-19 vaccine information contradicts that responsibility, threatens to further erode public trust in the medical profession and thus puts all patients at risk."

*FSMB: Spreading Covid-19 Vaccine Misinformation May Put Medical License At Risk*, FEDERATION OF STATE MEDICAL BOARDS, News Releases (Jul. 29, 2021), https://www.fsmb.org/advocacy/news-releases/fsmb-spreading-covid-19-vaccine-misinformation-may-put-medical-license-at-risk/.

41.     The Federation's press release is soliciting its member state boards to engage in actions which violate physicians' First Amendment rights, as set forth herein.

C.     **THE BOARD'S ANNOUCEMENT THAT IT IS IMPLEMENTING THE FEDERATION'S CALL-TO-ACTION TO PROSECUTE ITS LICENSEES FOR COVID "MISINFORMATION" IS ILLEGAL UNDER CALIFORNIA AND FEDERAL LAW**

42.     Upon information and belief, Ms. Kristina D. Lawson, JD is a California licensed and practicing environmental attorney who is the President of the Medical Board of California, and is or was at all relevant times, a voting member of the Federation, and/or a fellow, and currently serves on the Federation's "Ethics and Professionalism" committee.

43.     The following statement by Board President Kristina D. Lawson, JD appears in the Board's February 10-11 Meeting minutes:

> "Ms. Lawson stated it is the duty of the board to protect the public from misinformation and disinformation by physicians, noting the increase in the dissemination of healthcare related misinformation and disinformation on social media platforms, in the media, and online, putting patient lives at risk in causing unnecessary strain on the healthcare system.

> "Ms. Lawson elaborated in July 2021, the Federation of State Medical Boards released a statement saying physicians spreading misinformation or disinformation risk disciplinary action by their state medical board."

44.     Based on Ms. Lawson's statement in the February 2022 board meeting, Plaintiff Mackenzie, and members of Plaintiff PIC, (and other physicians throughout the state) continue to be at risk of Board investigation and disciplinary actions if they speak out against the government's response to the pandemic. Plaintiff Mackenzie and many of the PIC members would like to continue to do, but are now in fear of reprisal by the Board.

45.     Furthermore, upon information and belief, it would appear that Board president Lawson's public statement about the Board's intention of targeting physicians who spread Covid misinformation was intended to be an announcement of a new enforcement policy of general applicability to all California licensed physicians. At a minimum, that was its effect under color of law, and the Board was aware of and approving of said effect since it was continued in the Board's official published minutes.

**46.**     Under California law:

"Regulation means every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure."

Cal. Gov't Code § 11342.600.

**47.**     According to the California Office of Administrative Hearings:

"If a state agency issues, utilizes, enforces, or attempts to enforce a rule without following the APA when it is required to, the rule is called an "underground regulation." State agencies are prohibited from enforcing underground regulations."

*Underground Regulations*, OAL.CA.GOV, https://oal.ca.gov/underground_regulations/.

**48.**     Upon information and belief, the Board has not complied with the California APA for its Federation-based enforcement rule to prosecute physicians for spreading Covid misinformation. Accordingly, the Board's new enforcement rule targeting Covid misinformation is an illegal underground regulation under California law.

**49.**     Furthermore, the application of this underground regulation to the conduct of Plaintiff Mackenzie which occurred almost six months prior to the announcement of this underground regulation violates Article 1 Section 10 of the United States Constitution barring state *ex post facto* laws.

**50.**     Upon information and belief, there is no California statute which would fairly put Plaintiffs on notice that speaking out in public against the government's Covid response to the pandemic would be a board sanctionable offense. In fact, as suggested above and detailed later on, seventy-five years of First Amendment precedent strongly suggests professional boards cannot sanction or investigate professionals for their public speech. Accordingly, the Board's investigation of Plaintiff Mackenzie and the Board's request for Plaintiff Mackenzie to respond to the alleged complaint is a violation of Plaintiff's due process rights based on the vagueness of the purported statutory authority (as alleged in the Second Cause of Action commencing on page 20 *infra*).

1

2

### D.   THE CALIFORNIA LEGISLATURE ANSWERS THE FEDERATION'S CALL TO ACTION BUT THEN RECONSIDERS

3

4

5

6

7

8

9

10

11

**51.**     In addition to the Board's above-described investigations, in February 2022, the California Assembly introduced AB 2098, a Covid misinformation bill which in its original form would have made a physician's public expression of his opinions which contradict the "contemporary scientific consensus" about Covid, a board disciplinable offense. AB 2098 made specific reference to the Federation's July 2021 press release as a justification for the bill. *AB-2098 Physicians and surgeons: unprofessional conduct (2021-2022)*, CALIFORNIA LEGISLATIVE INFORMATION, (Date Published: 06/21/2022), https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202120220AB2098#99INT, Section 1 (f).

12

13

14

15

16

17

18

**52.**     However, because of expressed concerns that it would be unconstitutional for the Board to discipline physicians for their public speech, the bill was amended to limit its application to "treatment or advice" to a patient, which amendment solved the primary constitutional defect with the original bill.[7]  *Id*. at https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=202120220AB2098#97AMD  and the legislative analysis at *Id*. https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202120220AB2098.  4/15/22 Bill analysis at page 12, third paragraph.

19

20

21

22

**53.**     The critical point here is that unlike the Board, the California Legislative Committee recognized in writing that physicians cannot be sanctioned based on their public disagreement with the "contemporary scientific consensus" about Covid policy and science.

23

24

**54.**     The Legislative Analysis contains another comment attributed to the Medical Board admitting that the proposed statutory definition is perhaps irreparably vague and

25

26

27

28

[7]     Plaintiffs maintain that the amended bill also violates the First Amendment by improperly interfering with the right of physicians to speak candidly to their patients, and the patients' right to receive such candor from their physicians.

1   will subject the Board to legal challenges after it disciplines doctors for covid

2   misinformation. [8]

3       **55.**   After the Board was put on notice that the California Legislative Committees

4   recognized in writing that the Legislature cannot sanction physicians for protected speech,

5   the Board took no action for three months to withdraw the complaint against Plaintiff

6   Mackenzie. Rather, the Board continued investigating Plaintiff (and other physicians)

7   based on the Board's ex post facto plan, in the absence of statutory authority, and the

8   Board's unconstitutionally vague standard in violation of physician due process rights.

9   These facts evidence the Board's bad faith, which would bar application of federal comity

10  doctrines like *Younger* abstention.

11      **56.**   Nor does the Board have immunity from suit. At no point did the Board have

12  unbridled discretion to investigate and threaten prosecution of Plaintiff Mackenzie for his

13  protected speech. The decision to investigate and threaten prosecution of Plaintiff

14  Mackenzie occurred outside of the Board's statutory authority.

15      **57.**   On information and belief, the Board's unbridled conduct appears to have

16  maliciously targeted physicians in Plaintiffs' community,[9] with the intent to misapply

17  DCA authority to chill and punish constitutionally protected activity based on content and

18  viewpoint speech discrimination.

19

20

21  [8]     "MBC also states that 'The definition of "misinformation" is unclear and may lead to
22  legal challenges following the imposition of discipline under this proposed law." *AB-2098
    Physicians and surgeons: unprofessional conduct* (*2021-2022*), Bill Analysis, CALIFORNIA
23  LEGISLATIVE INFORMATION, https://leginfo.legislature.ca.gov/
    faces/billAnalysisClient.xhtml?bill_id=202120220AB2098, 6/24/22 Bill analysis at page 10,
24  comment 5, second paragraph. Currently, the Board does not appear to have a more specific
    published definition of "Covid misinformation" for which it can investigate or sanction
25  physicians than the definition in AB 2098.

26  [9]     The Board is acutely aware of Plaintiffs' community of 'vaccine concerned'
    professionals ("VC Community"). The Board regularly refers to members of the VC
27  Community as "anti-vaccine', to unscientifically vilify the VC Community by undermining
28  the credibility of its legitimate scientific discussion regarding vaccine risk assessment.

**58.** Similarly, the fact that the Board's actions involve more than Plaintiff Mackenzie and are part of a nationwide call-to-action to medical boards across the country constitutes exceptional circumstances which is a separate reason to reject federal comity/abstention.

**59.** And of course, since (i) this case involves an important First Amendment issue which should be resolved by the federal courts, and (ii) there is evidence of bad faith in the Board's investigation in violation of Plaintiff's clearly established First Amendment rights, no comity need be accorded to the Board or the state judicial system under *Younger* abstention or failure to exhaust considerations.

**60.** In short, this is not a lawsuit just about one California physician who was being investigated based on his protected speech. Rather, it challenges a clearly unconstitutional new Board prosecution policy which is being implemented at the direction of a constitutionally ignorant private entity which is trying to convince other state medical boards to engage in clearly unconstitutional activity.

**61.** This illegal-in-so-many-ways new prosecution policy thereby potentially affects many California physicians, as well as physicians in many other states who may want to speak out against aspects of the government's response to the pandemic. Protection against such clearly unconstitutional state action is why we have the federal courts.

///

///

///

///

///

///

///

///

///

15                     First Amended Verified Complaint

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. SECTION 1983 VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION ASSERTED AGAINST DEFENDANT WILLIAM J. PRASIFKA, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR, MEDICAL BOARD OF CALIFORNIA

**62.**     Plaintiffs repeat and reallege the allegations set forth above.

**63.**     The First Amendment provides in relevant part: "Congress shall make no law... abridging the freedom of speech." The First Amendment applies to actions by state agencies like the Board via the Fourteenth Amendment.

**64.**     The First Amendment's purpose is "to preserve an uninhibited marketplace of ideas in which the truth will ultimately prevail." *FCC v. League of Women Voters*, 468 U.S. 364, 377, 104 S. Ct. 3106, 3116 (1984).

**65.**     It is a "guiding First Amendment principal that the government has no power to restrict expression because of its message, its ideas, its subject matter or its content." *McCullen v. Coakley*, 573 U.S. 464, 477, 134 S. Ct. 2518, 2529 (2014) *quoting Police Dept. of Chicago v. Mosely,* 408 U.S. 92, 95, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972).

**66.**     Upon information and belief, no federal or state court in this country has ever approved the sanctioning of a physician or other health care professional for speaking out in public about a public health matter.

**67.**     In fact, there is an unbroken line of cases going back seventy-five years which establish that the Board's investigation of Plaintiff is a clear First Amendment violation.

**68.**     In *Pickup v. Brown*, 740 F.3d 1208, 1227 (9th Cir. 2014) the Ninth Circuit quoted a law review article for the proposition that "When a physician speaks to the public, his opinions cannot be censored or suppressed, even if they are at odds preponderate opinions within the medical establishment." The panel also quoted with approval a Colorado case with similar language that "the First Amendment does not

permit a court to hold a dentist liable for statements published in a book or made during a news program, even when the statements are contrary to the opinion of the medical establishment. *Id.* at 1227, *citing Bailey. v. Huggins Diagnostic & Rehab. Ctr. Inc*., 952 P.2d 768, 773 (Colo. Ct. App. 1997).

**69.**    The *Pickup* panel used these two authorities to drive home that the very end of the "continuum" of the most protected professional speech is where professionals engage in "public dialogue."

**70.**    The *Pickup* opinion cites these two authorities to expand on its reference to Justice White's concurring opinion in *Lowe v. SEC*, 472 U.S. 181, 232, 105 S. Ct. 2557, 2584 (1985), that when a professional

> "does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech; it becomes regulation of speaking or publishing as such, subject to the First Amendment's command that "Congress shall make no laws… Abridging the freedom of speech or the press.'"

*Pickup,* 740 F.3d at 1227.

**71.**    Justice White's words are a restatement of the concurring opinion by Justice Jackson in *Thomas v. Collins*, 323 U.S. 516, 545-46, 65 S. Ct. 315, 329-30 (1945). While Justice Jackson recognized the right of the state to regulate the practice of a profession ("pursuit of a calling"), he eloquently stated:

> "[I]t is not the right, of the state to protect the public against false doctrine. The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech, and religion. In this field every person must be his own watchman for truth, because the forefathers did not trust any government to separate the true from the false for us. *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628. Nor would I. Very many are the interests which the state may protect against the practice of an occupation, very few are those it may assume to protect against the practice of propagandizing by speech or press. These are thereby left great range of freedom.

"This liberty was not protected because the forefathers expected its use would always be agreeable to those in authority or that its exercise always would be wise, temperate, or useful to society. As I read their intentions, this liberty was protected because they knew of no other way by which free men could conduct representative democracy."

**72.** Fast forward seventy plus years, the legal phraseology is different, the substantive points the same, but the expression is much harsher. *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374 (2018), the majority opinion quoted a concurring opinion by an Eleventh Circuit judge who noted

"Throughout history, governments have `manipulat[ed] the content of doctor-patient discourse' to increase state power and suppress minorities." This *NIFLA* opinion then continued quoting the concurring judge's examples of Chinese, Soviet and Nazi doctors who "systematically violated the separation between state ideology and medical discourse. German physicians were taught that they owed a higher duty to the 'health of the Volk' than to the health of the individual patient."

*Id. quoting Wollschlaeger v. Governor of Florida*, 848 F.3d. 1293, 1328 (11th Cir. 2017) (Pryor, J. concurring opinion).

**73.** *NIFLA* dealt with government compelled speech requiring pro-life pregnancy centers to provide patients with information about abortions. Because it dealt with patients, it was far closer to professional conduct which the government can regulate.

**74.** If the Supreme Court thought it appropriate to liken compelling physicians to deliver a government created message to *patients,* imagine (*a fortiori)* what the Supreme Court majority would say about censuring and sanctioning a physician who expresses his personal opinions in public.

**75.** It is abundantly clear that the Board cannot sanction Plaintiff Mackenzie for speaking out publicly against the government's Covid edicts. But it is also clear that the Board cannot even investigate him, and physicians similarly situated in the VC Community, for expressing protected professional content and viewpoint speech, even if the view point is controversial.  So said a California district court and the Ninth Circuit in *Conant v. Walters,* 309. F.2d 629 (9th Cir. 2002).

**76.**     In that case, a preliminary and permanent injunction was issued against the DEA for investigating physicians for recommending medical marijuana to patients. Marijuana was (and still is federally) a schedule I illegal drug which conventional medicine did not then recognize as having any therapeutic benefit. Yet, the people of California decided otherwise and allowed it to be recommended (but not prescribed) by California physicians. The DEA's attempt to investigate and prosecute physicians for their protected speech was utterly rejected by the district and appellate court.

**77.**     If the DEA was enjoined from investigating physicians from *speaking to patients* about a federally illegal drug, *a fortiori,* the Board must be stopped from investigating Plaintiff for speaking favorably in public about an FDA approved drug (Ivermectin) and challenging other aspects of the public response to the pandemic, especially since he was relating opinions held by many others and supported by the medical literature.

**78.**     Although not necessary for the disposition of this case, an additional reason why the Board must be stopped from investigating physicians for speaking out against Covid edicts is the utter futility of its efforts. It strains credibility that sanctioning a few (or many) California physicians would have a significant impact on the widespread mistrust of the government's Covid edicts.

**79.**     There are hundreds if not thousands of physicians around the country who speak out about these edicts, most of whom are beyond the control of the Board. *It is a big internet*.

**80.**     Many state legislatures are trying to stop their medical boards from answering the Federation's call-to-action. The futility of the Board's efforts to stifle public opinion against government-promoted public health edicts eliminates any possibility that its actions could be constitutional.

**81.**     Finally, there are many less restrictive measures the state could implement which would have a more direct impact supporting the public health edicts, like public service announcements by academic physicians who support the mainstream Covid

narrative, influential endorsements and other measures geared directly to influence the public. The existence of these less restrictive measures eliminates any possibility that the Board's investigations are constitutional.

**SECOND CLAIM FOR RELIEF**

**42 U.S.C. SECTION 1983 DUE PROCESS VIOLATION BASED ON THE VAGUENESS OF THE STANDARDS AND STATUTORY BASIS USED TO INVESTIGATE PLAINTIFF MACKENZIE FOR COVID "MISINFORMATION." THIS CLAIM IS ASSERTED AGAINST DEFENDANT WILLIAM J. PRASIFKA, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR, MEDICAL BOARD OF CALIFORNIA.**

**82.**    Plaintiffs repeat and reallege the allegations set forth above.

**83.**    The is no specific statute which permits the Board to discipline or investigate a physician for speaking out in public about a medical or public health issue. [10]

**84.**    Upon information and belief, the Board appears to ground these Covid misinformation investigations on Cal. Bus. & Prof. Code § 2234 which provides that unprofessional conduct includes "(e) The commission of any act involving dishonesty or corruption that is substantially related to the qualifications, functions, or duties of a physician and surgeon."

**85.**    There is nothing in the plain meaning of this subsection which states or implies that a physician speaking in public against Covid public health edicts could be included in this subsection, or how such public discourse would be "substantially related to the qualifications, functions, or duties of a physician and surgeon."

**86.**    Accordingly, the Board's use of this subsection to ground its Covid misinformation investigations is inconsistent with the plain meaning of the statute.

---

[10]    As indicated, the original version of AB 2098 would have accorded the Board that specific statutory authority. However, the current version of AB 2098 would limit the Board's authority to sanction physicians for Covid misinformation (and disinformation) to communications with patients for treatment or advice. In any event, the bill could not be applied to Plaintiff Mackenzie *ex post facto.*

**87.**     More importantly, the subsection, as interpreted by the Board, violates the vagueness prohibition of the Due Process clause according to which:

> "an enactment is void for vagueness if its prohibitions are not clearly defined." *D.C. v. City of St. Louis* , 795 F.2d 652, 653 (8th Cir. 1986) (*quoting Grayned v. City of Rockford* , 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L.Ed.2d 222 (1972) ). Due process requires that laws provide fair notice by giving a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so he may act accordingly." Id. Due process also demands explicit standards to prevent arbitrary or discriminatory actions by those charged with enforcement. *Id."*

*Hopkins v. Jegley*, 510 F. Supp. 3d 638, 734 (E.D. Ark. 2021)

**88.**     The Board's purported use of this statute is unconstitutionally vague, at best, because it is devoid of any reference or implication that prohibits physicians from speaking in public, nor is there any indication who such public speech could be "substantially related to the qualifications, functions, or duties of a physician and surgeon."

**89.**     Furthermore, the apparent use of a "Covid misinformation" standard is also unconstitutionally vague because it is subject to being interpreted in an arbitrary and capricious manner.

**90.**     This Court has previously adjudicated a similar case involving government censorship and restrictions on free speech based on an unconstitutionally vague written policy in *Potts v. Cty. of Trinity*, No. 2:12-CV-01793 JAM-CMK, 2012 U.S. Dist. LEXIS 119920 (E.D. Cal. Aug. 22, 2012). In that case, this Court granted a preliminary injunction to a sheriff's deputy who had been censured for writing letters to the editor critical of policing policies. The preliminary injunction barred the sheriff's department from interfering with the deputy's First Amendment free speech rights, barred enforcement of the unconstitutionally vague written policy statement, and ordered the censure to be rescinded.

**91.**     The policy statement held to be unconstitutionally vague by this Court in *Potts*, is a quantum level less vague that Bus. & Prof. Code Section 2234 (e), or the

Federation's call to action. Accordingly, *Potts* supports a finding that purported bases of these Board investigations are unconstitutionally vague and that they deny Plaintiffs and similarly situated physicians due process, as well as violate their First Amendment free speech rights.

**A Word about "Covid misinformation"**

92.   As the virus has evolved, and as more time has passed, the public health edicts put out by the CDC have changed, sometimes contradicting earlier edicts, like the CDC's multiple positions on whether the vaccine could stop transmission, or the rarity of so-called "breakthrough infections" of the vaccinated and boosted.

93.   It was "Covid misinformation" to question the safety of the J&J vaccine due to concerns about life-threatening heart side effects, until the FDA came out and limited the use of the J&J vaccine because of the same side effects.

94.   There is nothing wrong with government agencies or established medical science changing their positions as new information is assimilated. In fact, it is a good thing. The problem, especially acute, in a fast-changing public health situation like Covid, is the governmental arrogance that physicians who challenge the accepted science are dishonest and need to be censored, sanctioned and reeducated for expressing their opinions in public. That is something the courts should not tolerate.

95.   Based on the continuing changing public health edicts and the evolving science, the Covid misinformation standard used by the Board in its investigation of Plaintiff and other physicians is unconstitutionally vague and violates Plaintiff Mackenzie's and Plaintiff PIC members' Due Process rights.

**THIRD CLAIM FOR RELIEF**

**42 U.S.C. SECTION 1983 DAMAGE CLAIM AGAINST THE INDIVIDUAL JOHN AND JANE DOE DEFENDANTS S FOR CIVIL RIGHTS VIOLATIONS UNDER COLOR OF STATE LAW**

96.   Plaintiffs repeat and reallege the allegations set forth above.

97.   Plaintiff Mackenzie has retained board counsel to defend him in the Board's investigation, and has paid $2,500 for such representation. Plaintiff PIC is spending time

and resources protecting its member physicians from the Board's policy of investigating physicians for Covid misinformation.

**98.** The individual MBC employees who decided to investigate Plaintiff for Covid misinformation rather than summarily dismissing the complaint acted under color of state law in violation of Plaintiff's clearly established First Amendment right to speak out in public about a matter of public interest.

**99.** Plaintiffs clearly established First Amendment rights to be free from Board investigation arising from his public speech is based on seventy-five years of precedent including *Conant v. Walters,* 309. F.2d 629 (9th Cir. 2002); *Pickup v. Brown*, 740 F.3d 1208, 1227-28 (9th Cir. 2014); *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374 (2018).

**100.** Further evidence that the First Amendment clearly established that it was illegal for the Board to investigate or prosecute Plaintiff for Covid misinformation comes from the fact that the April, 2022 amendment to AB 2098 removed the Board's authority to sanction physicians for publicly speaking out about Covid, which action was taken because of the patent unconstitutionality of the original bill.

**101.** Further guilty knowledge that the individual John and Jane Doe Defendants knew they were acting illegally comes from the legislative analysis statement that the Board feared that the bill's Covid misinformation standard was unconstitutionally vague, and that its vagueness may cause the Board to be sued after physicians were found guilty of Covid misinformation. However vague the Covid misinformation definition is in AB 2098, at least it is in writing for all to see. The lack of any published standards for the Board's current Covid misinformation investigations makes its actions even more constitutionally defective under the vagueness prohibition in the Due Process clause.

**102.** Based on the foregoing, Plaintiffs seek compensatory and punitive damages for the John and Jane Does' willful or reckless disregard of Plaintiffs' constitutional rights.

## **PRAYER FOR RELIEF**

WHEREFORE the Plaintiffs request that judgment be entered in their favor and against the Defendants as set forth in this First Amended Complaint, and specially that the Court:

**A.** Issue a preliminary and permanent injunction enjoining the Defendant as the Executive Director of the Board from continuing all its pending investigations for "Covid misinformation" grounded on the public speech of physicians, pending the final judgment in this action,

**B.** Issue a permanent injunction ordering the Board to dismiss the investigation of any physician who is being investigated for Covid misinformation based on such physician's public speech about a public health matter, and permanently barring the Board from commencing any future investigation based on a physician's public speech about a public health matter.

**C.** Actual and punitive damages in an amount to be determined at the trial of this action for the Board's conduct.

**D.** Costs and attorneys' fees as permitted by law,

**E.** Such other and further relief as the Court deems just and proper.

Date: July 28, 2022

Respectfully submitted,

Richard Jaffe, Esq.
SBN 289362
428 J Street, 4th floor
Sacramento, California, 95814
Telephone: 916-492-6038
Facsimile:  713-626-9420
Email:
rickjaffeesquire@gmail.com

Attorney for Plaintiffs Douglas
Mackenzie, MD and Physicians for Inf

1

## VERIFICATION

2          I, DOUGLAS MACKENZIE, MD declarers the following under penalties of

3    perjury:

4          1.      I am the individual Plaintiff in this action, and I am also an officer

5    (Treasurer) and board member of the other Plaintiff, Physicians for Informed Consent.

6    I am familiar with the facts set forth in this First Amended Verified Complaint.

7          2.      I believe the facts set forth therein are true and correct to the best of my

8    knowledge, except for those stated fact upon information and belief and as to those

9    facts, I believe them to be true.

10          I declare under penalty of perjury of the laws of the United States that the

11    foregoing is true and correct.

12          Executed this 28th day of July 2022.

13

14

15

16          _____

17          Douglas Mackenzie, MD for himself
          and Physicians for Informed Consent

18

19

20

21

22

23

24

25

26

27

28

                    25          First Amended Verified Complaint

**CERTIFICATE OF SERVICE**

I, Richard Jaffe affirm as follows:

1. I am an attorney at law admitted to practice in this court. I am not a party to this action and am over the age of 18. I am counsel of record for the plaintiffs in this case. I submit this Certificate of Service under penalties of perjury.

2. Today, I emailed a copy of this First Amended Verified Complaint to deputy attorney general Aaron Lent at Aaron.Lent@doj.ca.gov.

3. DAG Lent contact me on Wednesday, July 20th and told me that he had the original complaint and indicated that he represented the Defendant on this matter.

4. Since that time, I have had several communications with DAG Lent. I indicated to him that I would be filing this First Amended Verified Complaint.

5. Because he has not apparently appeared formally in this case, I am also regular mailing a copy of the First Amended Verified Complaint directly to the Defendant at his office address 2005 Evergreen St. Unit 1200, Sacramento Ca. 95815.

Date: July 29, 2022, Westport, Ct.

_____
Richard Jaffe

First Amended Verified Complaint