RICHARD JAFFE, ESQ.
State Bar No. 289362
428 J Street, 4th Floor
Sacramento, California 95814
Tel: 916-492-6038
Fax: 713-626-9420
Email: rickjaffeesquire@gmail.com

Attorney for Plaintiffs Douglas Mackenzie, MD
And Physicians for Informed Consent

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DOUGLAS MACKENZIE, MD and PHYSICIANS FOR INFORMED CONSENT, a not-for profit physicians' organization<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM J. PRASIFKA, In his official capacity as EXECUTIVE DIRECTOR, MEDICAL BOARD OF CALIFORNIA, and JOHN AND JANE DOES 1-10 being unknown state and other individuals who violated Plaintiff's clearly established First Amendment rights<br><br>Defendants. | No.: 2:22-CV-01203-JAM-KJN<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM IN SUPPORT THEREOF**<br><br>**Date:** September 27, 2022<br><br>**Time:** 1:30 p.m.<br><br>**Judge:** Judge John A. Mendez<br><br>**Location:** Courtroom 6 |

TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT** on September 27, 2022, at 1:30 p.m. or as soon thereafter as the matter may be heard, at the United States District Court for the Eastern

District of California, in courtroom number 6, 14th floor, 501 I Street, Sacramento California, the Plaintiffs will move for an order granting preliminary injunctive relief.

Pursuant to Federal Rules of Civil Procedure 65, Plaintiffs seek a preliminary injunction to enjoin William Prasifka, Executive Director of the Medical Board of California ("MBC" or the "Board") from commencing or continuing any investigation of a California licensed physician arising out protected free speech relating to Covid-19.

This motion is based on Plaintiffs' Notice of Motion and Motion, the Declarations of Plaintiff Douglas Mackenzie, and Counsel for Plaintiff Physicians for Informed Consent in support of the motion, a companion Motion for Judicial Notice, and all papers and records on file with the clerk or which may be submitted prior to the time of the hearing, and any further evidence which may be offered.

Dated August 9, 2022

Respectfully submitted,

_____

Richard Jaffe, Esq.
SBN 289362
428 J Street, 4th floor
Sacramento, California, 95814
Telephone: 916-492-6038
Facsimile:  713-626-9420
Email:  rickjaffeesquire@gmail.com
Attorney for Plaintiffs Douglas Mackenzie,
MD, and Physicians for Informed Consent

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.      INTRODUCTION .......................................................................................1

II.     STATEMENT OF MATERIAL FACTS .....................................................1

    A.   The Plaintiffs and other Board Investigations About Covid
        Misinformation ..................................................................................1

    B.   The Federation's Call to Action .......................................................2

    C.   The Board Announces a New Covid Misinformation Policy Retroactively
        Applied to Plaintiff and others .........................................................2

    D.   The Legislature Answers the Federation's Call-to-Action, and then
        Changes its Mind...............................................................................3

    E.   Judicial Notice of Basic Covid Facts ...............................................3

III.    LEGAL REQUIREMENTS FOR A PRELIMINARY INJUNCTION ..........3

IV.     ARGUMENT ...............................................................................................5

    A.   Plaintiffs have an overwhelming likelihood of success on the merits on
        their Constitutional Claims ...............................................................5

        1.   The First Amendment Free Speech Claim ..................................5

            a.   Basic Principles...............................................................5

            b.   Investigating Physicians for "Covid misinformation" is
                Targeting Protected Content-based Speech and therefore
                Presumptively Unconstitutional ......................................5

            c.   Investigating Physicians for "Covid misinformation" is
                Protected Viewpoint-based Speech which is Fully Protected
                Speech and Practically Speaking Per Se Unconstitutional ..............6

            d.   Ninth Circuit Authority Strongly Supports Issuing a
                Preliminary Injunction ....................................................7

            e.   *NIFLA v. Becerra* Strongly Supports Granting a Preliminary
                Injunction .......................................................................8

            f.   The Level of Scrutiny is Irrelevant Because the Board's
                Action Are Illegal Under State and Federal Law, apart from
                the Fact they Violate Physicians' Free Speech rights ....................9

i.     If allowed to continue, Board President Lawson's Statement of Intent to Pursue Physicians for Public Covid Misinformation would be an Illegal Underground Regulation ...................................... 10

(A)    Board President Lawson's Statement: ..................... 10

(B)    California law on Underground Regulations ........... 10

2.    Due Process Vagueness ................................................. 11

B.    Irreparable Injury ....................................................................... 12

C.    Balancing the Equities ................................................................ 13

D.    The Public Interest ..................................................................... 13

V.    REQUEST THAT NO BOND BE REQUIRED ............................................ 14

LOCAL RULE 234 (D)(3) STATEMENT ...................................................... 16

CERTIFICATE OF SERVICE ....................................................................... 16

    Motion for Preliminary Injunction

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*ACLU v. Ashcroft*,
   322 F.3d 240 (3rd Cir. 2003) ................................................................. 4

*Baby Tam & Co. v. City of Las Vegas*,
   154 F.3d 1097 (9th Cir. 1998) ............................................................... 4

*Conant v. Walters*,
   309 F.2d. 629 (9th Cir. 2002) ............................................................... 7

*Dream Palace v. County of Maricopa*,
   384 F.3d 990 (9th Cir. 2004) ................................................................. 4

*Elrod v. Burns*,
   427 U.S. 347, 96 S. Ct. 2673, 49 L.Ed.2d 547 (1976) ........................ 3

*Flexible Lifeline Sys. Inc. v Precision Lift, Inc.*
   654 F.3d 989 (9th Cir. 2001) ................................................................. 3

*Hopkins v. Jegley*,
   510 F.Supp.3d 638 (E.D. Ark. 2021) ................................................. 11

*Mc Cullen v. Coakley*,
   573 U.S. 464 (2014) ............................................................................. 5

*Members of the City Council v. Taxpayers for Vincent*,
   466. U.S. 789 (1984) ............................................................................. 6

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
   138 S. Ct. 2361 (2018) ....................................................................... 8, 9

*Otto v. City of Boca Raton*,
   981 F.3d 854 (11th Cir. 2020) ...................................................... 5, 6, 9

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*,
   475 U.S. 1 (1986) ................................................................................. 4

*Pickup v. Brown*
   740 F.3d 1208 (9th Cir. 2014) ............................................................. 7

*Potts v. Cty. of Trinity*, No. 2:12-CV-01793 JAM-CMK,
   2012 U.S. Dist. LEXIS 119920 (E.D. Cal. Aug. 22, 2012) ............... 12

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992) ........................................................................ 5

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ........................................................................ 5

*Rosenberger v. Visitors of Univ. of Virginia*,
   515 U.S. 819 (1995) ........................................................................ 6

*S.O.C. v. County of Clark*,
   152 F.3d. 1136 (9th Cir. 1998) ........................................................ 4

*Searcey v. Harris*,
   888 F.2d 1314 (11th Cir. 1989) ....................................................... 6

*United States v. Alverez*,
   567 U.S. 709 (2012) ................................................................. 4, 5, 8

*United States v. Steven*,
   559 U.S. 460 (2010) ........................................................................ 4

*Village of Hoffman Estates*,
   455 U.S. 489, 102 S. Ct. 1186 (1982) ........................................... 11

*Winter v. Natural Res. Def. Council, Inc.*
   555 U.S. 7 (2008) ........................................................................... 3

*Wollschlaeger v. Governor of Florida*,
   848 F.3d 1293 (11th Cir. 2017) ...................................................... 9

**California Cases**

*Clovis Unified Sch. Dist. v. Chiang*,
   188 Cal.App.4th 794 (2010) .......................................................... 11

*Excelsior College v. Cal. Bd. of Nursing*,
   136 Cal.App.4th 1218 (2006) ........................................................ 11

*Malaga Cty. Water Dist. v. Cent. Valley Reg'l Water Quality Control Bd.*
   58 Cal.App.5th 418 (2020) ............................................................ 10

*Modesto City Schools v. Education Audits Appeal Panel*,
   123 Cal.App.4th 1365, 20 Cal.Rptr.3d 831 (2004).......................... 11

*Morning Star v. State Bd. of Equalization*,
   38 Cal.4th 324 (2006) ................................................................................ 11

*Tidewater Marine Western, Inc. v. Bradshaw*,
   14 Cal.4th 557, 59 Cal.Rptr.2d 186, 927 P.2d 296 (1996) ...................... 10

**United States Constitution**

   Article 10 ...................................................................................................... 9
   First Amendment ................................................................................. 1, *passim*
   Fourteenth Amendment .............................................................................. 5

**California Statutes**

Government Code
   § 11340.5 (a) .............................................................................................. 10
   § 11342.600 ................................................................................................ 10
   § 11340 et seq. ........................................................................................... 11

Business & Professions Code
   § 2234 (e) ............................................................................................. 11, 12

**Internet Sources**

*FSMB: Spreading Covid-19 Vaccine Misinformation May Put Medical License
   At Risk*, Federation of State Medical Boards, News Releases (Jul. 29, 2021),
   https://www.fsmb.org/advocacy/news-releases/fsmb-spreading-covid-19-
   vaccine-misinformation-may-put-medical-license-at-risk/ .................................. 2

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3        This Motion for Preliminary Injunction seeks to stop the Medical Board of California,

4    (the "Board") from continuing or commencing any investigation against any California

5    licensed physician based on the physician's protected content and viewpoint speech about the

6    Covid pandemic.

7    **II.    STATEMENT OF MATERIAL FACTS**

8        **A.    The Plaintiffs and other Board Investigations About Covid Misinformation**

9        As set forth in the First Amended Verified Complaint ("FAVC"), the Board commenced

10   an investigation of Plaintiff Mackenzie by letter dated December 15, 2021, which requested

11   that he respond to the complaint that he spread Covid misinformation at a Zoom school board

12   meeting. FAVC page 7 para. 28 to page 8 para. 30. Plaintiff Mackenzie's attorney responded to

13   the request on January 10, 2022. The response did not attempt to explain or scientifically

14   support Plaintiff's speech. Rather, the response asserted Plaintiff's First Amendment right to

15   speak out in public. *Id*. at para. 31. The investigation was apparently pending until on or about

16   July 14, 2022, six days after this lawsuit was commenced, at which point, the Board notified

17   Plaintiff that the investigation had been closed. *Id*. at page 9 para. 32- 34. (Copies of these

18   three letters are attached to Plaintiff Mackenzie's Declaration.)

19       Plaintiff PIC is a physicians' organization which, *inter alia,* represents physicians who

20   support voluntary (as opposed to mandatory) vaccination and has different views of informed

21   consent about vaccines than many mainstream practitioners. It has member physicians who

22   speak out against the government's response to Covid and hence are live targets of the Board's

23   ongoing and imminent investigations for alleged Covid misinformation. *Id*. at page 5 para. 20,

24   to page 6 para. 23. (A Declaration from PIC's General Counsel is being submitted with this

25   Motion).

26       Plaintiffs are aware of at least two other Board investigations based in whole or in part

27   on complaints of public Covid misinformation. *Id*. at page 9 paras, 36-37.

28

**B.      The Federation's Call to Action**

On or about July 29, 2021, the Federation of State Medical Board issued a press release stating that its member state boards should investigate and sanction physicians for spreading Covid misinformation. Id. at page 10 para. 40 [1]

**C.      The Board Announces a New Covid Misinformation Policy Retroactively Applied to Plaintiff and others**

The minutes of the Board's February 10-11, 2022 meeting indicate that Board President Kristina Lawson, JD announced that the Board would implement the Federation's call-to-action and would investigate and discipline physicians for public dissemination of Covid misinformation. *Id.* at page 11 para. 43. [2]

---

[1] "Physicians who generate and spread COVID-19 vaccine misinformation or disinformation are risking disciplinary action by state medical boards, including the suspension or revocation of their medical license. Due to the specialized knowledge and training, licensed physicians possess a high degree of public trust and therefore have a powerful platform in society, whether they recognize it or not. They also have an ethical and professional responsibility to practice medicine in the best interests of their patients and must share information that is factually, scientifically grounded and consensus driven for the betterment of public health. Spreading inaccurate COVID-19 vaccine information contradicts that responsibility, threatens to further erode public trust in the medical profession and thus puts all patients at risk."

*FSMB: Spreading Covid-19 Vaccine Misinformation May Put Medical License At Risk*, Federation of State Medical Boards, News Releases (Jul. 29, 2021), https://www.fsmb.org/advocacy/news-releases/fsmb-spreading-covid-19-vaccine-misinformation-may-put-medical-license-at-risk/, offered into evidence as judicially noticeable via Plaintiffs' Motion for Judicial Notice, ("MJN"),  Appendix 1 attached to Counsel's Declaration.

[2] "Ms. Lawson stated it is the duty of the board to protect the public from misinformation and disinformation by physicians, noting the increase in the dissemination of healthcare related misinformation and disinformation on social media platforms, in the media, and online, putting patient lives at risk in causing unnecessary strain on the healthcare system.
Ms. Lawson elaborated in July 2021, the Federation of State Medical Boards released a statement saying physicians spreading misinformation or disinformation risk disciplinary action by their state medical board."

FAVC page 11 para. 43, reproduced and offered into evidence as judicially noticeable via the accompanying Motion for Judicial Notice, Appendix 2 to Counsel's declaration.

Motion for Preliminary Injunction

**D.      The Legislature Answers the Federation's Call-to-Action, and then Changes its Mind**

In February 2022, the California Assembly introduced AB 2098 which would make the pubic dissemination of Covid Misinformation a board sanctionable offense. Thereafter, and as a result of concerns about the lack of constitutionality, the Bill was amended to limit the conduct to interactions between physicians and patients for the purpose of treatment or advice. *Id.* at page 13 paras. 51-54. (Reproduced at MJN Appendix 3)

**E.      Judicial Notice of Basic Covid Facts**

The Court can take judicial notice that the world is still dealing with the Covid pandemic and neither this country nor the world has eliminated the pandemic via vaccines, which is the fist and main point Plaintiff made to the school board in his comments one year ago. MJN request number 5.

The Court can also take judicial notice of the fact that the Covid vaccines do not prevent infection or transmission of the disease, which is another point made by Plaintiff Mackenzie to the school board. MJN request 5.

**III.    LEGAL REQUIREMENTS FOR A PRELIMINARY INJUNCTION**

The standard four-part test for a plaintiff to obtain a preliminary injunction is: 1. Likelihood of success on the merits, 2. Irreparable injury in the absence of relief, 3. The balance of equities tips in plaintiff's favor, and 4. Showing the public interest favors granting the injunction. *Winter v. Natural Res. Def. Council, Inc*. 555 U.S. 7, 20 (2008); *Flexible Lifeline Sys. Inc. v Precision Lift, Inc*. 654 F.3d 989, 994 (9th Cir. 2001).

However, when the plaintiff asserts a constitutional claim, and especially one involving a fundamental right as is the case here, the three latter elements are either presumed or carry less importance in determining the need for preliminary injunctive relief.  Thus, in terms of the irreparable injury requirement, the Supreme Court has held that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury' for purposes of the issuance of a preliminary injunction." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L.Ed.2d 547 (1976); …." Establishing probable success on the merits of a First

Amendment claim itself demonstrates irreparable harm. *S.O.C. v. County of Clark*, 152 F.3d. 1136, 1148 (9th Cir. 1998).

Similarly, regarding the balancing of the interests of the parties, in *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1102 (9ᵗʰ Cir. 1998),[3] this Circuit reversed the lower court's denial of a preliminary injunction, because it concluded that the plaintiff had established that the challenged ordinance violated the First Amendment. It ordered the district court to enter a *permanent* injunction. without a trial and without considering the balance of equities between the parties.

*Baby Tam* is consistent with the Supreme Court's reluctance to balance the equities when the government is attempting to suppress content-based speech. *See United States v. Alverez*, 567 U.S. 709, 717 (2012) ("In light of the substantial and expansive threats to free expression posed by content-based restrictions, this court has rejected as 'startling and dangerous' a 'free floating test for First Amendment coverage … [based on] an ad hoc balancing of relative social costs and benefits.' *United States v. Steven*, 559 U.S. 460, 470 (2010)."

As to the public's interest, it has been generally held that there is no public "interest in the enforcement of an unconstitutional law." *ACLU v. Ashcroft*, 322 F.3d 240, 251 n. 11 (3ʳᵈ Cir. 2003). Further, "By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information." *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 8 (1986).

In short, if Plaintiffs clearly establishes a First Amendment violation, this federal court should grant the preliminary injunction stopping the continuing Constitutional violation. It would be odd indeed if the Court would conclude that investigating Plaintiff and other physicians for speaking in public violates their First Amendment rights of free speech (and the concomitant right of the public to hear this information), and or violates their Due Process

---

[3] Abrogated on other grounds by *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1002 (9th Cir. 2004).

Motion for Preliminary Injunction

rights, but nonetheless decided not to enjoin the continuing violations.  The Court should stop the Board, right here, and right now.

## IV.    ARGUMENT

### A.    Plaintiffs have an overwhelming likelihood of success on the merits on their Constitutional Claims

#### 1.    The First Amendment Free Speech Claim

Because Plaintiffs fully tabled First Amended Verified Complaint sets out and discusses most of the relevant case law, there seems little need to repeat that herein. Instead, the legal arguments will be summarized and amplified as necessary.

##### a.    Basic Principles

The First Amendment applies to States via the Fourteenth Amendment and at its core provides that with some limited exceptions, the government has no power to restrict the subject matter or content of speech (FAVC page 16, paras. 63-65).

##### b.    Investigating Physicians for "Covid misinformation" is Targeting Protected Content-based Speech and therefore Presumptively Unconstitutional

In this case, the Board is investigating Plaintiff and all similarly situated physicians based on the content of their speech, *i.e.*  speech relating to the "topic discussed or the idea or message expressed." *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015). A reliable way to determine whether the government's restriction of free speech is content-based is to ask whether the enforcement authorities must "examine the content of the message that is conveyed to know whether the law has been violated." *Otto v. City of Boca Raton,* 981 F.3d 854, 862 (11th Cir. 2020) *citing Mc Cullen v. Coakley,* 573 U.S. 464, 479 (2014).

Government restrictions of content-based speech are "presumptively invalid." *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992). The seminal and most recent and Supreme Court case on the general illegality of content-based government restrictions is *United States v. Alverez,* 567 U.S. 709, wherein the Supreme Court struck down the Stolen Valor act, which made it a crime to lie about receiving the Congressional medal of honor. The Supreme Court

held that the act was an improper content-based restriction barred by the First Amendment free speech clause, even though the speech criminalized by the act involved a lie.

It is indisputable that the Federation's July 29, 2021 call-to-action and Board President's Lawson's implementation thereof (via her February 10-12, 2022 Board memorialized comments) targets highly protected content-based pure speech of the Plaintiff and any other California licensed physician who speaks out against the Government's response to Covid. As such, this censorship of physician viewpoints is presumptively unconstitutional.

### c. Investigating Physicians for "Covid misinformation" is Protected Viewpoint-based Speech which is Fully Protected Speech and Practically Speaking Per Se Unconstitutional

Of all the types of content-based speech, viewpoint-based government restrictions to free speech is an especially "... egregious form of content discrimination." *Otto v City of Boca Raton,* 981 F.3d at 864, *citing Rosenberger v. Visitors of Univ. of Virginia,* 515 U.S. 819, 829, (1995). In fact, in *Otto*, the Eleventh Circuit stated that:

> Indeed, there is an argument that such regulations are unconstitutional per se; The Supreme Court has said that 'the First Amendment *forbids* the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.' *Members of the City Council v. Taxpayers for Vincent,* 466. U.S. 789, 804 (1984) (parallel citations omitted). In that case, it applied heightened scrutiny only after finding that the challenged law was viewpoint neutral. (citations omitted.) As Rosenberger said, 'government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speak is the rationale for the restriction. (citation omitted.) And we have not shied away from the same point: 'The prohibition against viewpoint discrimination is 'firmly embedded in first amendment analysis' *Searcey v. Harris*, 888 F.2d 1314, 1325 (11th Cir. 1989). Those holdings do not leave a lot of breathing room for viewpoint-based speech restrictions.

*Id*.

The take-away from *Otto* is that while the Supreme Court has not quite explicitly adopted a *per se* rule against viewpoint-based government restrictions to free speech, there is

1  almost no "breathing room" for such government interference. And let us remember that *Otto*

2  involved communications between health care practitioners and their patients. So, whatever

3  breathing room there might be for the government to restrict professional speech to patients is

4  likely nonexistent when the practitioner is speaking to the public, as set forth in this case.

### d.   Ninth Circuit Authority Strongly Supports Issuing a Preliminary Injunction[4]

7     In *Pickup v. Brown*, 740 F.3d at 1227, the court cited two authorities (a Colorado

8  Appellate Decision and a law review article) that stated that health care boards cannot

9  discipline practitioners for expressing their opinions in public. FAVC at page 16 para, 68 to

10  page 17, para. 69.

11     The *Pickup* court also cited Justice Byron White who cited Justice Jackson, both of

12  whom expressed the same notion, that the government cannot sanction professionals for

13  speaking out in public about matters of public concern. (*Id.* at page 17 para. 71 to page 18).

14     In *Conant v. Walters*, 309 F.2d. 629 (9th Cir. 2002) two separate district court judges

15  entered injunctions against the DEA for investigating physicians for recommending medical

16  marijuana to their patients which was held to be a First Amendment violation, and the

17  permanent injunction was upheld by this circuit.

18     It is important to point out that *Conant* was not a challenge by a physician under DEA

19  investigation for recommending medical marijuana (or challenging the DEA's request to

20  respond to a complaint).  It was a challenge filed by patient and physician groups based on a

21  DEA written policy sent to state medical boards and physicians' organizations that the DEA

22  would investigate physicians who would "risk revocation of their DEA prescription authority"

23  if they recommended the schedule 1 drug to patients. *Conant v. Walters*, *supra,* 309 F.2d. at

24  633 (9th Cir. 2002).

---

[4] FAVC page16 para. 68 to page 18 para. 71 and page 18 para. 75 to page 19 para. 77 contains
an extensive discussion of the *Pickup* and *Conant* cases.

The analogy here is that *Conant* strongly suggests that Board President Lawson's statement in the Board minutes is an actionable infringement of California physicians' First Amendment rights, and that the fact that the Board has closed its investigation is not a defense to this lawsuit.

Finally, there is an *a fortiori* argument to be made from both *Pickup* and *Conant*. Both involved communications between physicians and patients, which is far closer to professional conduct which incidentally involves speech, which may be less protected than public speech which cannot be suppressed or sanctioned except for rare exceptions based on "historical and traditional" categories of speech not accorded constitutional protections like fighting words, obscenity, commercial speech and such. *See United States v. Alvarez,* 567 U.S. at 717.

### e.   *NIFLA v. Becerra* Strongly Supports Granting a Preliminary Injunction

*Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374 (2018) is the most recent Supreme Court authority on speech by professionals and it offers important guidance which support the granting of a preliminary injunction for several reasons. *NIFLA* dealt with government compelled speech in the form of a law requiring anti-abortion pregnancy centers to provide patients with information about abortions. The California district court denied the plaintiff's First Amendment motion for preliminary injunction, and the Ninth Circuit affirmed. The Supreme Court reversed and ordered the Ninth to order the district court to grant the preliminary injunction.

To get there, first, the Supreme Court rejected the notion circulating in the lower courts (including the Ninth Circuit) that professional speech was a distinct form of speech over which the government had greater regulatory control than other types of pure speech.

Second, the majority opinion manifested a deep skepticism about the government's attempt to control speech by physicians, even when the speech is directed to patients. This deep mistrust caused the Supreme Court to cite some extremely harsh analogies to the most extreme authoritarian regimes that had also attempted to control what physicians told patients.

To make that point, the majority opinion quoted a concurring opinion by an Eleventh Circuit judge who noted that "Throughout history, governments have `manipulat[ed] the content of doctor-patient discourse' to increase state power and suppress minorities." The *NIFLA* opinion then continued quoting the concurring judge's examples of Chinese, Soviet and Nazi doctors who "systematically violated the separation between state ideology and medical discourse. German physicians were taught that they owed a higher duty to the 'health of the Volk' than to the health of the individual patient." *NIFLA,* 138 S. Ct. at 2374 (2018), *quoting Wollschlaeger v. Governor of Florida*, 848 F.3d 1293, 1328 (11th Cir. 2017) (Pryor, J. concurring opinion).

If the *NIFLA* majority thought such harsh historical comparisons were appropriate for physician communications with patients, one can only image what they would say about attempted government suppression of physicians who speak out in public.

> **f.     The Level of Scrutiny is Irrelevant Because the Board's Action Are Illegal Under State and Federal Law, apart from the Fact they Violate Physicians' Free Speech rights**

Content and viewpoint-based restrictions to free speech being a fundamental right are usually mandate strict scrutiny meaning proof of a compelling state need and the least restricting means possible. *Otto v. City of Boca Raton,* 981 F.3d 854.  However, arguably, no such analysis is required in this case because the Board's investigations of physicians for their public speech does not satisfy any level of scrutiny for the simple reason that its actions are otherwise illegal under federal and state law for three reasons: (1). The Board is attempting enforce an illegal and unenforceable underground regulation, (2). Its investigation of Plaintiff Mackenzie and all other physicians prior to the Board's announcement of the underground regulation would violate the ex post facto provision of Article 10 of the Constitution and (3).  The only theoretical statutory authority for these Board investigations is unconstitutionally vague and overbroad.

### i.    If allowed to continue, Board President Lawson's Statement of Intent to Pursue Physicians for Public Covid Misinformation would be an Illegal Underground Regulation

### (A)    Board President Lawson's Statement:

Board President's Lawson's statement recorded in the Board's minutes (page 2, footnote 2 *supra*) is an official Board statement of general applicability announcing a new board enforcement policy which presumably implements or interprets some preexisting statutory authority allowing it to "protect the public" from misinformation/disinformation "on social media platforms, in the media and online" such that the Board can and will discipline physicians for publicly propagating misinformation and/or disinformation.

### (B)    California law on Underground Regulations

The California Administrative Procedure Act ("APA") provides that "[n] o state agency shall issue, utilize, enforce, or attempt to enforce ... a regulation" without complying with the APA's notice and comment provisions. (Gov. Code, § 11340.5, subd. (a).)

Under the APA,

> "[a] 'regulation'" is defined as "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." (Gov. Code, § 11342.600.) This is a very broad definition, providing two principal identifying characteristics for regulations. (See *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571, 59 Cal.Rptr.2d 186, 927 P.2d 296 (*Tidewater*).) "First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must 'implement, interpret, or make specific the law enforced or administered by [the agency], or ... govern [the agency's] procedure.' " (*Ibid.*)

*Malaga Cty. Water Dist. v. Cent. Valley Reg'l Water Quality Control Bd.* 58 Cal.App.5th 418, 434 (2020).

As set forth by the California Appellate court in *Excelsior College v. Cal. Bd. of Nursing*, 136 Cal.App.4th 1218 (2006):

> "An underground regulation is a regulation that a court may determine to be invalid because it was not adopted in substantial compliance with the Administrative Procedure Act (Gov. Code, § 11340 et seq.) . . . ." (*Modesto City Schools v. Education Audits Appeal Panel* (2004) 123 Cal.App.4th 1365 1381, 20 Cal.Rptr.3d 831.) We will conclude a regulation is an underground regulation if (1) the agency intended it to apply generally rather than in a specific case and (2) the agency adopted it to implement, interpret, or make specific the law enforced by the agency. (*Ibid.*)"

*Id.* at 1233.

Since the Board cannot show compliance with the APA in issuing this new enforcement policy adopting the Federation's press release, the policy is an illegal and unenforceable underground regulation. *See Morning Star v. State Bd. of Equalization*, 38 Cal.4th 324 (2006) (underground regulation is invalid and unenforceable); *Clovis Unified Sch. Dist. v. Chiang*, 188 Cal.App.4th 794 (2010) (same).

## 2.    Due Process Vagueness

It is black letter constitutional law that where a statute "threatens to inhibit the exercise of constitutionally protected rights," the Constitution requires an especially high level of clarity. *Village of Hoffman Estates,* 455 U.S. 489, 499, 102 S. Ct. 1186, 1193 (1982).  And a law which "nominally imposes *** civil penalties," if those are "prohibitory and stigmatizing," courts still undertake a close review for vagueness. Id."  *Hopkins v. Jegley*, 510 F.Supp.3d 638, 734 (E.D. Ark. 2021).

The Board's apparent attempt to use Bus. & Prof. Code Section 2234(e) as the basis for its Covid misinformation investigations triggers the strictest review for vagueness, because it both inhibits the exercise of constitutionally protected right to free speech and because findings

Motion for Preliminary Injunction

of professional misconduct constitute stigmatizing penalties.[5] Plaintiffs submit this purported

basis of the investigation of Plaintiffs and other physicians is unconstitutionally vague and

threatens to inhibit the exercise of Plaintiffs and all California physicians First Amendment

rights of free speech to the public.

This court itself has had experience with a case with multiple similarities to this one.  In

*Potts v. Cty. of Trinity*, No. 2:12-CV-01793 JAM-CMK, 2012 U.S. Dist. LEXIS 119920 (E.D.

Cal. Aug. 22, 2012), this Court granted a preliminary injunction to a sheriff's deputy who was

censured for writing letters to the editor critical of policing policies. A copy of the preliminary

injunction order and the transcript of the hearing of the motion is attached to Counsel's

declaration in the MJN as Appendix 4. The policy statement held to be unconstitutionally

vague in *Potts*, is a quantum level less vague that Business and Professions Code section

2234(e), or the Federation's call to action.

Accordingly, the Board's possible use of Section 2234(e) as a basis for sanctioning

physicians for speaking out in public fails because of its vagueness violation of due process.

### B.      Irreparable Injury

Plaintiffs' declarations show that protected free speech is actively being chilled, causing

irreparable injury to the physicians and also the public that benefits from the free marketplace

of ideas.

As indicated in Section II above, irreparable injury is presumed if there is strong

evidence of a First Amendment freedom of speech violation. The Board's February 10-11,

2022 announcement that it intended to effectuate the Federation's call-to-action has had a

chilling effect on Plaintiff Mackenzie and other physicians. The Declaration of PIC's counsel

Greg Glaser quotes an example of the types of communications he has received from PIC's

---

[5] Bus. & Prof. Code Section 2234(e) makes Board sanctionable: "(e)  The commission of any
act involving dishonesty or corruption that is substantially related to the qualifications,
functions, or duties of a physician and surgeon." Unless and until AB 2098 passes there is no
other possible statute which could even arguably apply to Plaintiffs' conduct, and of course,
the bill even if it because law could not be applied retroactively for ex post facto reasons.

members asking for guidance about what they are permitted to say about Covid in public. Mr. Glaser's declaration describes the adverse and chilling effects that the Board's announced policy (and AB 2098) is having on PIC's members.

### C.  Balancing the Equities

The balance of equities favors protecting protected free speech. It favors the free marketplace of ideas. And here, it also favors recognition of the fact that scientific debate is, and needs to be vibrant regarding Covid.

The balance of equities further favors Plaintiffs because the Board does not have the statutory or regulatory authority to investigate or sanction physicians for speaking out in public about the pandemic, and its attempt to do so is based on an underground regulation, an unconstitutionally vague statute, and the ex post facto application of the underground regulation. In addition, seventy-five years of jurisprudence strongly suggests that the government cannot suppress content and viewpoint public speech.

It is otherwise hard to see how the Board can have any equities on its side when there does not appear to be a single case in United States jurisprudence which has affirmed a licensing board's attempt to sanction a licensee for public speech relating to a matter of public importance. And finally, the Board cannot demonstrate that investigation or even sanctioning a few or even many California physicians would have a meaningful impact on the public health discussion of the government's response to the pandemic. Thus, the Board's newly created investigative authority over protected speech is not only unconstitutional, it is futile.

### D.  The Public Interest

Obviously, the public cannot have any interest in the Board acting illegally and in violation of the constitutional rights of its licensees. Beyond the manifest illegality, in an evolving pandemic, the public's interest is best served by having medically trained people speak in public, even if their viewpoint is against the currently accepted government views. Indeed, scientific progress made to date has depended upon free speech.

The Glaser Declaration presents several examples where the public health authorities had to walk-back their recommendations, in part based on criticism by physicians who might

have been accused of "Covid misinformation.  One thing which the pandemic has surely taught us all is that the science is evolving, and that sometimes, what was thought to be so by the experts, has turned out not to be so.

It is not the job of a California Medical Board to police, investigate, sanction, censor or sanitize the thoughts and public speech of its licensees about matters of public importance. That is the fundamental truth of this case, and why the Court should stop the Board from doing so.

## V.    REQUEST THAT NO BOND BE REQUIRED

This case seeks to protect the First Amendment rights of physicians to speak out in public about important matters of public interest, and the First Amendment rights of the public to hear the views of physicians who disagree with the government's prevailing (but continually changing) Covid narrative.

We have a long tradition in this country of allowing people to express their views about matters of public importance, subject to clearly defined categories of unprotected content-based speech. There is no tradition of suppressing physicians from speaking their minds, at least there was no such tradition until the Federation's call-to-action attempt to create one.

No harm will befall the Board if the Court maintains the status quo of our long tradition of free speech by granting the requested preliminary injunctive relief. Therefore, Plaintiffs' request that no bond be required if the requested relief is granted.

WHEREFORE for the foregoing reasons, Plaintiffs request that the Motion for Preliminary Injunction be granted, and specifically that

1. the Board be ordered to stop all its investigations of physicians for protected free speech, including but not limited to the public expression of views about the pandemic, the mandates, vaccines, treatments or any other content relating to the pandemic,

2. All subjects of the Board's current investigations for Covid misinformation (and disinformation) be notified that their investigation has been temporarily ordered withdrawn pending the final order of this Court;

3. The Board post on its web site that the Board President Lawson's February board meeting statement announcing that those physicians are subject to investigation and disciplinary action for covid mis/disinformation has been enjoined by this Court;

4. That no preliminary injunction bond is required, and for such other and further relief as the Court deems just.

Dated: August 9, 2022                    Respectfully submitted,

_____

Richard Jaffe, Esq.
SBN 289362
428 J Street, 4th floor
Sacramento, California, 95814
Telephone: 916-492-6038
Facsimile:  713-626-9420
Email:  rickjaffeesquire@gmail.com

Attorney for Plaintiffs Douglas Mackenzie, MD, and Physicians for Informed Consent

**LOCAL RULE 234 (D)(3) STATEMENT**

1.  Plaintiffs do not intend to present oral testimony at the hearing.

2.  Plaintiffs anticipate that 30 minutes for the hearing should be sufficient.

_____
Richard Jaffe, Esq.

**CERTIFICATE OF SERVICE**

I, Richard Jaffe affirm as follows:

1.  I am an attorney at law admitted to practice in this court. I am not a party to this action and am over the age of 18. I am counsel of record for the Plaintiffs in this case. I submit this Certificate of Service under penalties of perjury.

2.  I emailed a copy of this Notice of Motion and Motion for Preliminary Injunction to deputy attorney general Aaron Lent at Aaron.Lent@doj.ca.gov who previously indicated to me that he represents (or will be representing) the Defendant.

3.  Today, August 9, I emailed DAG Lent the Notice of Motion and Motion for Preliminary Injunction at his above-listed email address.

4.  Because he has not appeared formally in this case, I also mailed a copy of the First Amended Verified Complaint directly to the Defendant at his office address 2005 Evergreen St. Unit 1200, Sacramento Ca. 95815, certified mail RRR.

Dated: August 9, 2022
       Westport, Ct.

_____
Richard Jaffe, Esq.